UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DONALD HARTWELL                                                                    PLAINTIFF

VS.                                                        CIVIL ACTION NO. 3:09cv260-DPJ-FKB

U.S. FOODSERVICE, INC., ET AL.                                                 DEFENDANTS

**ORDER**

This ERISA dispute is before the Court on Defendant Hartford Life and Accident Insurance Company's motion for summary judgment [22]. The Court finds that the matter should be remanded to the Plan Administrator. However, the Court also finds that this case invokes issues left unresolved in *Vega v. National Life Insurance Service, Inc*., and that interlocutory appeal is appropriate. 188 F.3d 287 (5th Cir. 1999).

I.      Facts/Procedural History

Plaintiff Donald Hartwell was employed as a truck driver for U.S. Foodservice, Inc., until January 2002 when he ceased work due to pain in his left shoulder, neck and knee. The employer carried long-term disability ("LTD") benefits under an ERISA governed Group Long Term Disability Plan (the "Plan") issued by Defendant Hartford Life and Accident Insurance Company ("Hartford"). During all relevant times, Hartford administered claims made under the Plan and served as Plan Administrator.

The Plan included the following relevant provisions:

**HOW DO WE DEFINE DISABILITY?**
Disability or Disabled means that You satisfy the Occupation Qualifier as defined below:
**Occupation Qualifier**
> "Disability" means that during the Elimination Period and the following 24 months, Injury or Sickness causes physical or mental impairment to such a degree of severity that You are:

(1) continuously unable to perform the Material and Substantial Duties of Your Regular Occupation; and

(2) not working for wages in *any occupation* for which You are or become qualified by education, training or experience. After the Monthly Benefit has been payable for 24 months, "Disability" means that Injury or Sickness causes physical or mental impairment to such a degree of severity that You are:

(1) continuously unable to engage in any occupation for which You are or become qualified by education, training or experience; and
(2) not working for wages in any occupation for which You are or become qualified by education, training or experience.

…

Administrative Record (A.R.) at 12 (emphasis added).

**Proof of Disability**

The following items, supplied at Your expense, must be a part of Your proof of loss. Failure to do so may delay, suspend, or terminate Your benefits:
…
4. Proof that You are receiving Appropriate and Regular Care for Your condition from a Doctor, who is someone other than You or a member of Your immediate family, whose specialty or expertise is the most appropriate for Your disabling condition(s) according to Generally Accepted Medical Practice.

5. Objective medical findings which support Your Disability. Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine, for Your disabling condition(s).

6. The extent of Your Disability, including restrictions and limitations which are preventing You from performing Your Regular Occupation.

A.R. at 17.

Finally, the Policy contained a reimbursement provision based on the receipt of "Deductible Sources of Income" which provides:

**SUBROGATION/RIGHT OF REIMBURSEMENT**

> When any claim payment is made, We reserve any and all rights to subrogation and/or reimbursement to the fullest extent allowed by statute and customary practice. Any party to this contract shall not perform any act that will prejudice such rights without prior agreement with Us.

A.R. at 19.

Hartford paid Plaintiff short-term disability ("STD") benefits through the maximum payable period of July 22, 2002 and then began paying Plaintiff LTD benefits effective July 23, 2002. A.R. at 605-606. Hartford eventually concluded that Plaintiff was not incapable of performing "any occupation" and therefore discontinued LTD benefits on January 30, 2006. Plaintiff appealed, and Hartford upheld its decision in May 2006. Although Plaintiff continued to supplement the record and seek reconsideration, Defendant refused to consider these submissions, explaining that "there are no provisions under the Policy for additional appeals or reopening the administrative record after a final appeal determination." A.R. at 213. Plaintiff eventually filed suit April 23, 2009. Personal and subject matter jurisdiction exist, briefing is complete on Defendant's motion for summary judgment, and the Court is prepared to rule.

II.     Standard

    A.     Summary Judgment

Summary judgment is warranted under Rule 56(c)(2) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000).

Finally, the non-movant is required to "articulate the precise manner in which the submitted or identified evidence supports his or her claim." *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). In the present case, Plaintiff makes a number of factual assertions without supporting sights to the record which totals nearly 1,000 pages. Although the Court endeavored to consider the record as a whole, to the extent it may have overlooked evidence Plaintiff failed to identify, the Court is "under no duty 'to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Fuentes v.*

*Postmaster Gen. of U.S. Postal Serv.*, 282 F. App'x 296, 300 (5th Cir. 2008) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir.1992)); *see also Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.").

  B. Review of Plan Administrator's Decision under ERISA

  Plaintiff challenges the Plan Administrator's conclusion that he was not disabled as defined in the Plan. Where, as here, a plan confers discretion on the administrator to construe the plan's terms, the administrator's decision is reviewed for abuse of discretion. *See Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 537-38 (5th Cir. 2007). Under this two-step inquiry, the Court first asks whether the administrator's determination was legally correct. If not, the Court then asks whether the decision was an abuse of discretion. *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 n.2 (5th Cir. 2009). A court may "skip the first step," however, "if [it] can more readily determine that the decision was not an abuse of discretion. *Id.*

  "When reviewing for arbitrary and capricious actions resulting in an abuse of discretion, we affirm an administrator's decision if it is supported by substantial evidence." *Gosselink v. American Tel. & Tel. Inc.*, 272 F.3d 722, 726 (5th Cir. 2001) *cited in Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 652 (5th Cir. 2009). "[R]eview of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on a low end." *Holland*, 576 F.3d at

247. Yet, this review is not merely a rubber stamp. The courts "will not countenance a denial of a claim solely because an administrator suspects something may be awry." *Vega*, 188 F.3d at 302. Instead, the Court must "focus on whether the record adequately supports the administrator's decision." *Id.* at 298.

Finally, in cases such as this where the administrator is employed by Defendant, a conflict of interest exists. *Vega*, 188 F.3d at 298-99. The Court considers the conflict as one factor in determining whether an abuse of discretion has occurred. *Holland*, 576 F.3d at 248 (citing *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008)) .

III. Analysis

A. Plaintiff's Claim

Plaintiff challenges the termination of his LTD benefits. Because the administrative record includes some evidence supporting Plaintiff's position, the Court will skip to the second step and determine whether the decision was arbitrary and capricious. *Holland*, 576 F.3d at 246 n.2. In doing so, the Court concludes that concrete evidence supported the decision at the time it was made.

There is no dispute that Plaintiff suffered periods of both short and long-term disability for which he received benefits. The ultimate question, however, is whether he was still eligible for those benefits in May 2006 when the Plan Administrator denied his appeal. At that time, the Plan required Plaintiff to demonstrate "total disability," which it defined as follows:

> "Disability" means that Injury or Sickness causes physical or mental impairment to such a degree of severity that You are:
>
> (1) continuously unable to engage in any occupation for which You are or become qualified by education, training or experience; and

(2) not working for wages in any occupation for which You are or become qualified by education, training or experience

A.R. at 12.[1]  Plaintiff had the burden under the Plan of proving total disability. *Id*. at 17.  Thus, the more narrow question is whether Plaintiff could perform "any occupation."

       1.      The Record at the Time of Decision

Defendant concluded that Plaintiff could perform light duty work and terminated long-term benefits on January 3, 2006.  The decision was based on the following evidence in the administrative record:

- Dr. Capel, the neurosurgeon who performed Plaintiff's spinal surgery, released Plaintiff to light duty work on November 2002, seven months after his surgery. A.R. at 609.

- Dr. Temple, the orthopedic surgeon who performed Plaintiff's left shoulder surgeries, was the only other doctor known to the Plan Administrator prior to the decision.  Dr. Temple released Plaintiff to sedentary work after his first surgery in February 2003, and then indicated Plaintiff's recovery time for the second surgery of July 2003 would be six months.  A.R. at 564, 579.

- On March 8, 2004, Dr. Temple responded to the Plan Administrator and indicated that Plaintiff could perform light duty work "anytime."  A.R. at 548.

- Although Dr. Temple indicated on June 30, 2005 that Plaintiff needed additional shoulder surgery that he could not presently afford, Dr. Temple confirmed on that same date that Plaintiff was capable of performing sedentary work "anytime." A.R. at 517, 531.

- The Plan Administrator believed that surveillance video from June through September 2005 indicated capacity greater than Plaintiff had reported.  A.R. 406-409.

---

[1]Plaintiff argues that an "Earnings Qualifier" provision in the Plan would render him totally disabled if impairment would prevent him from earning more than 80% of his monthly earnings.  However, this qualifier applies only when the participant is "Gainfully Employed." A.R. at 12.  Plaintiff was not gainfully employed when the decision was made, and the Plan Administrator would not have abused her discretion in finding this provision inapplicable.

7

- October 2005, Defendant interviewed Plaintiff and concluded that his statements were inconsistent with the video. A.R. 419.

- The Plan Administrator retained Dr. Harvey Popvich who performed an independent records review and discussed Plaintiff's case with the only known treating physician, Dr. Temple. The record includes a letter from Dr. Popvich to Dr. Temple confirming that other than shoulder restrictions, Plaintiff had no other restrictions on his ability to work. A.R. 381.[2]

- Dr. Popvich concluded on January 24, 2006, that Plaintiff could perform full-time work. A.R. at 380.

- January 2006, a vocational rehabilitation consultant for the Plan Administrator determined that Plaintiff could perform various occupations within the limits recommended by Dr. Popvich and Dr. Temple. A.R. at 275-303.

The Plan Administrator terminated long-term benefits January 30, 2006. At the time, surgery had been recommended, but Plaintiff had not been treated in several months, and his doctor had not restricted his ability to perform sedentary work.

Plaintiff appealed the termination of benefits and submitted two additional items for consideration. First, Plaintiff provided a functional capacity evaluation (FCE) indicating that he could not return to work. A.R. at 250. Second, he submitted an SSDI Notice of Award which included a finding of total disability. *See* A.R. at 232.

Defendant noted several problems with the FCE. First, the FCE was arranged by Plaintiff and stated that the objective was to "[d]etermine ability to work – *maintain disability status*." A.R. at 250 (emphasis added). Second, although selected by Plaintiff, the therapist

---

[2]Plaintiff argues that as late as October 2005, Dr. Temple concluded that he was totally disabled. However, the only record cite supporting the argument is a note from Dr. Temple indicating that Plaintiff would need surgery and would be unable to work for six months thereafter. *See* A.R. at 792. The note is largely illegible, but appears to indicate that the period of disability would occur after the surgery. In any event, the administrative record includes Dr. Popvich's January 2006 letter confirming his conversation with Dr. Temple which did not indicate total disability at that time. A.R. at 381.

8

noted on the first page of the report that "[s]ymptom magnification behavior was exhibited." *Id*. The report further noted that certain test results were "invalid." A.R. at 252. The therapist ultimately concluded that "[b]ased on the performance given by Mr. Hartwell during this evaluation the recommendation is that he not return to work. Mr. Hartwell was very pain focused during the test. The patient did show some inconsistency during test that could have been due to pain or submaximal effort." A.R. 259. The parties dispute the meaning of "pain focused," but it would not be arbitrary or capricious to find the description consistent with the observation of symptom magnification.

Following the FCE results, Defendant retained another expert, Dr. Robert Pick, to again review all of Plaintiff's records. A.R. at 234. Dr. Pick noted that despite the ultimate conclusion of the FCE Plaintiff obtained and submitted, the test results demonstrate some capacity and would support work in the light category. A.R. at 240. He also noted that the FCE could not be fully credited given the symptom magnification issues. *Id*. Dr. Pick then opined that Plaintiff could return to some form of work. A.R. at 240-41.[3]

---

[3]Although not addressed by the parties, it is not clear whether the FCE actually supports a finding of total disability as defined in the Plan. First, as Dr. Pick noted, the FCE did report certain work related capacities. Second, the final section of the report titled "FEASIBILITY FOR RETURN TO WORK as a result of PHYSICAL PERFORMANCE EVALUATION" observes that Plaintiff's occupation was "Truck Driver" which fell into the "Medium" demand level. A.R. at 259. The report then checks the box marked "NO" next to "Recommend Return to Work." The next question on the form reads "Recommend Modified Duty," but the therapist left that question blank and did not mark either the "YES" or the "NO" box. *Id*. He then concluded at the bottom of the same page that Plaintiff "not return to work." *Id*. Given the information at the top of this form, it is not clear whether his recommendation that Plaintiff "not return to work," related to a return to prior employment or return to any occupation. Finally, even if the FCE can be read as opining that Plaintiff cannot return to any occupation, "plan administrators are not obliged to accord special deference to the opinions of treating physicians." *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003).

9

Defendant also rejected the SSDI determination submitted by Plaintiff. Hartford's Disability Appeals Specialist Joye Kelly performed an independent review of the full file and affirmed the appeal in a written letter dated May 15, 2006. A.R. at 230. Kelly acknowledged the SSDI determination, but noted that Hartford was "not bound under the terms of th[e] contract as a result of the favorable decision from any other State or governmental Agency." She concluded that the SSDI and FCE were inconsistent with the other evidence in the administrative record as well as the opinions of the Plaintiff's own doctor. A.R. at 231.

Plaintiff's arguments that this record demonstrates abuse of discretion are not persuasive. First, Defendant's doctors were not required to personally examine Plaintiff. *See McDonald v. Hartford Life Group Ins. Co.*, 361 F. App'x 599, 610 (5th Cir. 2010) (citing *Gothard v. Metro. Life Ins. Co*, 491 F.3d 246, 249 & n. 7 (5th Cir. 2007) (declining to require a physical examination prior to denial of claim and citing cases in support)). Second, Defendant and its experts gave ample consideration to subjective complaints of pain, but there was evidence of magnification, and Plaintiff's own doctors indicated that he could handle light duty work. *See Id.* at 612-13 (rejecting similar argument where administrator's experts considered by rejected subjective complaints of pain) (citing *Corry*, 499 F.3d at 398 n.12). Third, Defendant acknowledged the SSDI finding but was not required to reach the same conclusion as the Social Security Administration. *See Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 471 n.3 (5th Cir. 2010) (finding abuse where SSDI determination was not considered, but noting,"[w]e do not require Hartford to give any particular weight to the contrary findings; indeed, Hartford could have simply acknowledged the award and concluded that, based on the medical evidence before it, the evidence supporting denial was more credible").

On this record, the decision was supported by substantial evidence at the time the appeal was denied in May 2006. *See Corry v. Liberty Life Ins. Co. Of Boston*, 499 F.3d 389, 398 (5th Cir. 2007) (defining substantial evidence as "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (citation and quotations omitted). Moreover, a "rational connection [existed] between the known facts and the decision or between the found facts and the evidence." *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996).[4]

2. Post Appeal Record

After Defendant denied his appeal on May 6, 2006, Plaintiff continued to submit information to the Plan Administrator. In June 2006, Plaintiff submitted medical records regarding an April 2006 knee surgery. A.R. at 218-23. In April 2008, Plaintiff submitted previously unproduced medical records from a previously undisclosed doctor, Gary McCarthy, M.D. A.R. at 198-208. The April 2008 records indicated that Plaintiff was seeking treatment for his shoulder injury and was unable to work at various times from August 2006 through April 2007. Although the new records addressed conditions present shortly after the final denial, Plaintiff did not produce them to the Plan Administrator for nearly two years. Hartford declined to consider the new records.

---

[4]The Court acknowledges and has considered that a conflict existed because the Plan Administrator was employed by Defendant. However the conflict was minimized to some extent because Defendant took steps to insulate the decisionmaker by compensating her without regard to its financial performance or her decisions. Moreover, Plaintiff did not present evidence demonstrating a more significant conflict. *McDonald v. Hartford Life Group Ins. Co.*, 361 F. App'x 599, 608 (5th Cir. 2010) ("If claimants do not present evidence of the degree of the conflict, the court will generally find that any conflict is 'not a significant factor'") (citing *Holland*, 576 F.3d at 249). Thus, while the conflict was considered as a factor, it does not change the result.

Defendant baldly argues that "the court may only consider the evidence presented to Hartford when it made the decision to deny Plaintiff's claim and appeal." D.'s Mem. [23] at 18. Defendant offered no authority for this position, and the issue delves into a potentially murky area of Fifth Circuit jurisprudence. *See, e.g.*, *Needham v. Tenet Select Benefit Plan*, No. Civ. A. 02-3291, 2004 WL 193131, at *7 (E.D. La. Jan. 30, 2004) (noting that *Vega* fails to "provide any guidance regarding the limits of post hoc accretion of the administrative record.").

"[W]hen assessing factual questions, the district court is constrained to the evidence before the plan administrator." *Vega*, 188 F.3d at 299. Yet, this merely begs the question: What evidence is actually before the plan administrator? Most federal circuits hold that a decision is reviewed for abuse of discretion based on the information provided to the plan administrator before the final determination. *See Shaikh v. Liberty Life Assurance Co. of Boston*, No. H-08-0204, 2010 WL 2710606, at *14–15 (S.D. Tex. July 6, 2010) (observing majority rule); *Anderson v. Cytec Indus., Inc.*, No. 07-5518, 2009 WL 911296, at *7 (E.D. La. Mar. 27, 2009) (same); *see also Keele v. JP Morgan Chase Long Term Disability Plan*, 221 F. App'x 316, 321 (5th Cir. 2007) (same).

That may not be the case in the Fifth Circuit. In *Vega*, an en banc court addressed the scope of the administrative record.

> Before filing suit, the claimant's lawyer can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it. . . . If the claimant submits additional information to the administrator, however, and requests the administrator to reconsider his decision, that additional information should be treated as part of the administrative record. Thus, we have not in the past, nor do we now, set a particularly high bar to a party's seeking to introduce evidence into the administrative record.

> We hold today that the administrative record consists of relevant information
> made available to the administrator prior to the complainant's filing of a lawsuit
> and *in a manner that gives the administrator a fair opportunity to consider* it. . . .
> Furthermore, in restricting the district court's review to evidence in the record, we
> are merely encouraging attorneys for claimants to make a good faith effort to
> resolve the claim with the administrator before filing suit in district court . . . .

*Id*. at 300 (emphasis added) (citation omitted). After stating that evidence submitted pre-suit is appropriately part of the administrative record, *Vega* then holds that the district court's review is based on the administrative record. *Id.*

In *Keele*, an unpublished Fifth Circuit panel decision, the court noted that "[t]hese passages [from *Vega*] suggest that new evidence submitted by the claimant becomes a part of the administrative record even if it is submitted after the administrator has reached its final decision." *Keele*, 221 F. App'x at 320.[5] As such, the district court must consider the new evidence. *Vega*, 188 F.3d at 300. *Keele* observed, however, that this construction of *Vega* appears to "conflict with prior cases in which we indicated that the administrative record consisted of those documents before the administrator at the time the claims decision was made." *Keele*, 221 F. App'x at 320 (collecting cases). *Keele* further noted uncertainty in determining what it means to give the plan administrator a "fair opportunity" to consider the new evidence. *Id*. Does it mean that the information must be provided sufficiently in advance of suit? Or, does it mean that the information must be provided close to the time of decision? *Id*.

Ultimately, *Keele* stopped short of resolving the "practical problems" it observed in *Vega* because "the documents in dispute [did] not change the disposition of the case." *Id*. *Shaikh* and other cases follow the same approach, holding that even if the new evidence should have been

---

[5]This interpretation appears correct, but the facts of *Vega* suggest that is based on dicta.

13

considered, it would not demonstrate an abuse of discretion. *Shaikh*, 2010 WL 2710606, at *15 (citing *Patterson v. Prudential Ins. Co. of Am.*, 693 F. Supp. 2d 642, at 655 n.91 (S.D. Tex. 2010); *Keller v. AT & T Disability Income Plan*, 664 F. Supp. 2d 689, 702-03 (W.D. Tex.2009)). The evidence in the present case will not allow that approach.

Plaintiff's first post-appeal production occurred in June 2006 and related to the April 2006 knee surgery. This production came just one month after the Plan Administrator's final decision and well in advance of suit. Defendant therefore had a "fair opportunity" to consider it. That said, the knee surgery evidence was vague and incomplete. Thus, if that evidence stood alone, the Court would take the same approach as in *Keele* and find that it does not alter the review. However, the evidence did not stand alone.

In April 2008, Plaintiff again attempted to supplement the administrative record, this time with several documents relating to his shoulder. The first was a letter dated August 9, 2006, in which Dr. McCarthy acknowledged Plaintiff's referral and recounted Plaintiff's medical history. A.R. at 202. In the second, Dr. McCarthy reported that Plaintiff would be scheduled for rotator cuff repair. A.R. at 204. In September 2006, McCarthy performed the surgery. A.R. at 205-06. In subsequent reports from October and November 2006, McCarthy reported Plaintiff's post-surgery status. A.R. at 207, 203. Although these records discuss Plaintiff's condition, they contain no specific reference to disability. Then, in a letter dated April 24, 2007, Dr. McCarthy stated that Plaintiff was "currently totally temporarily disabled from work" pending "a repeat repair of a rotator cuff of his left shoulder," and would "not reach maximal medical improvement for at least four months after surgery." A.R. at 201. Dr. McCarthy followed this with a May 15, 2007 letter in which he reiterated that Plaintiff "remains disabled pending surgery on this rather

14

large left rotator cuff tear." He further noted that the injury was "a repeat tear" and was "confirmed by MRI." McCarthy concluded that Plaintiff was "unable to do his current job as a truck driver as he is in severe pain." A.R. at 200.

As discussed, without Dr. McCarthy's records, the Court would find that Plaintiff failed to prove an abuse of discretion. The McCarthy records after September 2007 suggest, however, that Plaintiff's condition continued to worsen. These records were not available when the appeal was denied and cast Plaintiff's injury in a different light. Under one interpretation of *Vega's* "fair opportunity" language, they should have been considered.[6]

Defendant argues (at least in the context of the new evidence regarding the knee surgery) that remand is the appropriate remedy. Def.'s Reply [42] at 5 n.3. Historically, the Fifth Circuit has sanctioned remand for review of evidence or issues that the plan administrator failed to consider. *Moller v. El Campo Aluminum Co.*, 97 F.3d 85, 89 n.4 (5th Cir. 1996); *Offut v. Prudential Ins. Co. of Am.*, 735 F.2d 948, 950 (5th Cir. 1984) (citing *Wardle v. Cent. States*, *Se. & Sw. Areas Pension Fund*, 627 F.2d 820, 824 (7th Cir. 1980)). If, as *Vega* suggests, this Court's review is not limited to the information presented to the Plan Administrator prior to the decision, then remand would be consistent with *Vega's* policy of encouraging resolution at the administrative level. Accordingly, the matter is remanded with instructions that the Plan

---

[6]The Court is aware of cases such as *Schaffer v. Benefit Plan of Exxon Corp.*, suggesting that a delay in production may defeat the fair opportunity to consider the evidence. 151 F. Supp. 2d 799, 809 (S.D.Tex. 2001). *Keele* notes this possible interpretation but then notes that the policy of *Vega* suggests that fair opportunity relates to the time to act before suit is filed. Here the new evidence was produced approximately ten (10) months prior to the filing of this suit and therefore offered a "fair opportunity" for review.

Administrator consider the post-appeal, pre-suit evidence Plaintiff presented. Summary Judgment is denied.

B. Defendant's Claim for Recoupment

The parties appear to agree that Defendant was entitled to set off SSDI benefits paid to Plaintiff. *See* A.R. at 604. Because no set-offs occurred, overpayments resulted. The parties dispute whether Defendant's counterclaim for these set-off amounts are time barred, prompting Defendant to note that it seeks recoupment, and that "claims for recoupment are never subject to statutes of limitations as long as the plaintiff's action is timely." Def.'s Reply [42] at 9. However, "[r]ecoupment is a defense that goes to the foundation of plaintiff's claim by deducting from plaintiff's recovery all just allowances or demands accruing to the defendant with respect to the same contract or transaction." *Distrib. Servs., Ltd. v. Eddie Parker Interests, Inc.*, 897 F.2d 811, 812 (5th Cir.1990) (citing *Pa. R. Co. v. Miller*, 124 F.2d 160, 162 (5th Cir. 1941)). Recoupment is, therefore, "a purely defensive procedure, it is available to defendant so long as plaintiff's claim survives—even though an affirmative action by defendant is barred by limitations." *Id.*; *see also Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 675 (5th Cir. 2000) (referring to recoupment claim as affirmative defense); *In re Gober*, 100 F.3d 1195, 1207 (5th Cir. 1996) ("Recoupment is a demand asserted to diminish or extinguish the plaintiff's demand").

Defendant's motion for summary judgment on this issue is denied without prejudice because it is not ripe. If Plaintiff recovers on the LTD claim, then recoupment appears appropriate. If not, then Defendant would have no right to recoupment.

IV. Conclusion

Summary judgment is denied without prejudice. However, questions remain as to the full scope of *Vega* and whether this Court's review is limited to the record before the Plan Administrator at the time the appeal was denied in May 2006. *Keele* demonstrates that Defendant's motion raises "controlling question[s] of law as to which there is substantial ground for differences of opinion . . ." 28 U.S.C. § 1292(b) (2006). Moreover, "immediate appeal of the order may materially advance the ultimate termination of the litigation." *Id*. Therefore, the Court finds that interlocutory appeal is appropriate in this case.

**SO ORDERED AND ADJUDGED** this the 13th day of September, 2010.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE